UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

PRINCE K.,[1]                                    Case No. 24-CV-3134 (PJS/ECW)

                    Plaintiff,

v.                                                          ORDER

KRISTI NOEM, Secretary of Department
of Homeland Security, in her official
capacity; KIKA SCOTT, Senior Official
Performing the Duties of the Director,
U.S. Citizenship and Immigration
Services; STEVEN RICE, Field Office
Director, U.S. Citizenship and
Immigration Services St. Paul-
Minneapolis Field Office, in her official
capacity,

                    Defendants.

---

Cameron Lane Youngs Giebink and David L. Wilson, WILSON LAW GROUP,
for plaintiff.

Shane Alan Young, DEPARTMENT OF JUSTICE – CIVIL DIVISION; Craig R.
Baune, UNITED STATES ATTORNEY'S OFFICE, for defendants.

Petitioner Prince K. ("Prince") is a citizen of Liberia and resident of Minnesota.

Prince brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C.

§§ 701 et seq., alleging that defendants (together, "USCIS") violated the Immigration

and Nationality Act, 8 U.S.C. §§ 1101 et seq.; the Liberian Refugee Immigration Fairness

---

[1]Because this is an immigration case, the Court identifies petitioner and his wives
only by their first names and last initials.  *Cf.* Fed. R. Civ. P. 5.2(c).

Act ("LRIF"), National Defense Authorization Act for Fiscal Year 2020, Pub. L. 116–92, § 7611, 133 Stat. 1198, 2309; and the APA when they denied his application to adjust his immigration status.  Prince seeks review of that final agency action, as well as injunctive and declaratory relief.  USCIS moves to dismiss the amended petition for failure to state a claim on which relief may be granted.  For the reasons that follow, the Court grants USCIS's motion.

## I.  BACKGROUND

Prince and Fredricklyn J. ("Fredricklyn") were joined in a traditional marriage in Liberia in August 2013.  *See* Ex. A at 4, ECF No. 28.[2]  Six months later, in February 2014, Prince applied for a non-immigrant visa, ostensibly so he could visit his new wife in North Carolina, where she lived.  Am. Pet. ¶ 20, ECF No. 15.  He represented on his application—and then again during his consular interview—that he was married to Fredricklyn.  *Id.*; Ex. A at 3–4.  Prince's visa application was approved, and he entered the United States in April 2014.  Am. Pet. ¶ 21.  Fredricklyn gave birth to Prince's first child the following month.  *Id.* ¶ 22.

In July 2014, Fredricklyn filed a Form I-130, Petition for Alien Relative ("Form I-130"), on Prince's behalf.  Four months later, however, Fredricklyn withdrew her petition.  *Id.* ¶ 23; Ex. A at 4.  Fredricklyn explained in a letter to USCIS that Prince had

---

[2]When citing documents by ECF number, the Court cites to the electronically generated page numbers at the top of the page.

moved out of her home just three weeks after the birth of their child—that is, just two months after he had arrived in the United States—in order to live with a woman who was claiming that Prince was *her* husband.  Ex. A at 4.  According to the letter, Prince had returned to Fredricklyn's home two weeks later to make amends and ask Fredricklyn to file a Form I-130 on his behalf.  *Id.*  Fredricklyn acceded to Prince's request.  Soon after Fredricklyn filed the Form I-130, Prince moved out of her home again—once again to live with the woman who claimed that he had married her.  *Id.*

In January 2015, several months after Prince moved out of Fredricklyn's home for the second (and final) time, Prince applied for temporary protected status and work authorization, and he represented in his applications that he was married to Fredricklyn.  *Id.*; Am. Pet. ¶ 24.  Prince's applications were approved in June 2015.  *Id.*  About a month later, Prince and Fredricklyn were divorced.  Am. Pet. ¶ 25.

In August 2016, Prince married Kanumu K. ("Kartumu") in Minnesota.  *Id.* ¶ 26; Ex. A at 4.  Kartumu gave birth to Prince's second child in August 2017.  Am. Pet. ¶ 28.  Approximately two years after they were married, in August 2018, Kartumu filed a Form I-130 petition on Prince's behalf, and Prince concurrently filed a Form I-485, Application to Register Permanent Residence or Adjust Status ("Form I-485").  *Id.* ¶ 26; Ex. A at 4.  On his Form I-485, Prince represented that he had been married only once, identified Kartumu as his one and only wife, and reported that he had two children:

one with Kartumu, and another with Fredricklyn, whom Prince identified as a former

girlfriend (not as a former wife).  Ex. A at 4–5; Am. Pet. ¶ 27.

In July 2019, USCIS interviewed Prince and Kartumu to determine Prince's

eligibility to adjust his status.  *Id.*  In that interview, Prince declared under oath that he

had been married only *once* (to Kartumu), that he had never been married (culturally or

otherwise) to Fredricklyn, and that he had never been married (culturally or otherwise)

to any other person.  *Id.*  USCIS denied Kartumu's Form I-130 petition in January 2020,

Ex. B at 12, ECF No. 28, and denied Prince's Form I-485 application in March 2020, *id.*;

Am. Pet. ¶ 29.

In April 2020, Prince filed a second Form I-485 application, this time under the

LRIF.  Am. Pet. ¶ 30.  Both in his written application and during his interview with

USCIS, Prince represented that he had been married *twice*:  first to Fredricklyn and then

to Kartumu.  *Id.* ¶ 31; Ex. B at 12.  In December 2020, USCIS issued a Notice of Intent to

Deny Prince's second Form I-485 application and recommended that Prince submit a

Form I-601, Application for Waiver of Grounds of Inadmissibility ("Form I-601").  Am.

Pet. ¶ 32.  Prince submitted a Form I-601 waiver petition in January 2021.  *Id.* ¶ 33.

In January 2024, USCIS denied Prince's second Form I-485 application,

explaining that he had "repeatedly misrepresented material information regarding [his]

marital status and [his] relationship with Fredricklyn" and that he was therefore

inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i).  *Id.* ¶ 34; Ex. B at 12.  USCIS also denied

his Form I-601 waiver petition, explaining that Prince had failed to demonstrate that a

qualifying relative would suffer extreme hardship were his status not adjusted.  Ex. B at

13.  Prince timely filed an administrative appeal, arguing that his misrepresentations,

although willful, were not "material" under § 1182(a)(6)(C)(i).  Am. Pet. ¶ 35.  USCIS

denied the appeal, again citing Prince's misrepresentations concerning his marriage to

Fredricklyn in his first Form I-485 application and during his July 2019 interview with

USCIS.  *Id.* ¶ 36; ECF No. 36-1 at 2.

   This action followed.  Count I of the amended petition alleges that USCIS

misinterpreted § 1182(a)(6)(C)(i) and acted arbitrarily and capriciously in denying

Prince's second Form I-485 application.  Am. Pet. ¶¶ 64–65.  Count II alleges that USCIS

acted arbitrarily and capriciously by directing Prince to file the incorrect waiver petition

following the agency's issuance of a Notice of Intent to Deny Prince's second Form I-485

application.  Am. Pet. ¶¶ 73–74.  Counts III and IV seek declarations that, because

USCIS erroneously interpreted § 1182(a)(6)(C)(i) and steered Prince to the incorrect

form, Prince is eligible to adjust his status under the LRIF.  Am. Pet. ¶¶ 79–86.  The

Court will first address Counts I and III, and then address Counts II and IV.

## II. ANALYSIS

### A. Standard of Review

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept as true all of the factual allegations in the complaint (or, in this case, amended petition for review) and draw all reasonable inferences in the petitioner's favor. *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013). Ordinarily, if the parties present, and a court considers, matters outside of the pleadings, the motion must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). But a court may—without converting the motion into one for summary judgment—consider materials that are necessarily embraced by the petition, such as "documents whose contents are alleged in [the [petition] and whose authenticity no party questions, but which are not physically attached to the [petition]." *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) (internal quotation marks omitted).

Both parties have submitted materials outside of the amended petition. USCIS has submitted its January 2024 decisions denying Prince's second Form I-485 application and his Form I-601 waiver petition. Prince has submitted his motion to reconsider those denials, the materials he filed in support of that motion, and USCIS's decision denying that motion. Neither side has objected to the Court's consideration of these documents, and the amended petition, which repeatedly references and quotes

these documents, clearly embraces them.  The Court will therefore consider these

materials without converting USCIS's motion into one for summary judgment.

*B.  Material Fact*

Under the LRIF, "the Secretary [of Homeland Security] shall adjust the status of

an alien" who meets certain criteria.  LRIF, § 7611(b)(1).  One of those criteria is that the

alien be "admissible to the United States for permanent residence."  *Id.*  Section 1182(a)

lists a number of things that make an alien *inadmissible* to the United States for

permanent residence, including the following, which is found in § 1182(a)(6)(C)(i), and

which USCIS says applies to Prince:  "Any alien who, by fraud or willfully

misrepresenting a material fact, seeks to procure (or has sought to procure or has

procured) a visa, other documentation, or admission into the United States or other

benefit provided under this chapter is inadmissible."

Prince concedes that he willfully misrepresented facts about his marriage to

Fredricklyn on his first Form I-485 application and during his first interview with

USCIS in order to obtain an immigration benefit.  The only issue, then, is whether the

facts that Prince misrepresented were "material."  Prince urges the Court to construe

"material fact" to mean a fact that, if known, *would* have led to the discovery of

information that *would* have affected the ultimate eligibility determination.  Prince

argues that, although he lied about his marriage to Fredricklyn, those lies were

immaterial because (1) Minnesota recognizes his cultural divorce from Fredricklyn;

(2) his subsequent marriage to Kartumu was therefore lawful; and (3) USCIS did not

make a finding of marriage fraud under 8 U.S.C. § 1154(c).

In response, USCIS argues that a "material fact" is one that, if misrepresented or

concealed, tends to shut off a line of inquiry into a matter that is *relevant* to an

applicant's admissibility, regardless of whether that inquiry, once completed, would

have resulted in a determination that the applicant was ineligible.  Because Prince's

marital history was *relevant* to his eligibility determination—as USCIS was required to

determine whether his marriage to Kartumu was legal and bona fide, as well as

whether he had unlawfully obtained or sought to obtain prior immigration

benefits—USCIS argues that Prince lied about a material fact when he represented to

USCIS that he had never been married to Fredricklyn.  During the hearing, each party

conceded that, if the other party is correct about the applicable legal standard, then the

other party should prevail on this issue.

Materiality is a question of law.  *Kungys v. United States*, 485 U.S. 759, 772 (1988).

"A concealment or misrepresentation is material if it has [a] 'natural tendency to

influence the decisions of the Immigration and Naturalization Service.'"[3]  *United States*

---

[3]The Immigration and Naturalization Service ("INS") was the predecessor agency to USCIS and Immigration and Customs Enforcement.  The Homeland Security Act of 2002, 6 U.S.C. §§ 101 et seq., dismantled the INS and reallocated the

(continued...)

*v. Hirani*, 824 F.3d 741, 749 (8th Cir. 2016) (quoting *Kungys*, 485 U.S. at 772). "The test more specifically is whether the misrepresentation or concealment had a natural tendency to produce the conclusion that the applicant was qualified." *Id.* (cleaned up). A misrepresentation or concealment of fact[4] is material for purposes of § 1182(a)(6)(C)(i) when it "tends to shut off a line of inquiry that is relevant to the alien's admissibility and that would predictably have disclosed other facts relevant to his or her eligibility for a visa, other documentation, or admission to the United States." *Matter of D-R*, 27 I. & N. Dec. 105, 113 (BIA 2017).

Applying this standard, courts routinely hold that facts relating to an applicant's marital history are "material" under § 1182(a)(6)(C)(i). *See, e.g., Toribio-Chavez v. Holder*,

---

[3](...continued)
responsibility for immigration services to USCIS.

[4]Prince vigorously argues that it is the *fact* that is misrepresented, not the *misrepresentation itself*, that must be material under § 1182(a)(6)(C)(i). The Court agrees that this is what the statute says. At the same time, the Court is not entirely certain that it understands the difference between "misrepresenting a material fact" and "make"mak[ing] a material misrepresentation of fact." Courts applying § 1182(a)(6)(C)(i) routinely refer to "misrepresentations" (rather than "facts") as "material," but those courts also appear to use "misrepresentation" as shorthand for "the fact that was misrepresented." *See, e.g., Hirani*, 824 F.3d at 749 ("A misrepresentation or concealment has such tendency if the true representation would predictably have disclosed *other facts* relevant to the applicant's qualifications." (emphasis added) (cleaned up)); *Matter of D-R*, 27 I. & N. Dec. 105 113 (2017) ("[W]e will consider whether the misrepresentation tends to shut off a line of inquiry . . . that would predictably have disclosed *other facts* relevant to [the petitioner's] eligibility. . ." (emphasis added)).

611 F.3d 57, 60 (1st Cir. 2010) (denying petition for review after applicant was found

inadmissible because he "willfully misrepresent[ed] a material fact, specifically . . . that

his marriage . . . was his first and failing to identify his children"); *Evelyn M. v. Swanson*,

No. 23-CV-3478 (ECT/ECW), 2024 WL 2728461, at *6 (D. Minn. May 28, 2024) (failing to

disclose children "indisputably shut off a line of inquiry relevant to [petitioner's]

admission" because disclosure "would have led USCIS to inquire

regarding . . . marriage fraud" (internal quotation marks omitted)); *Matter of Mavis

Nyarko Mensah*, 28 I. & N. Dec. 288, 295 (BIA 2021) (affirming immigration judge's

conclusion that misrepresented fact was material where "respondent's

misrepresentation to the USCIS that she was residing with her first husband either had

a natural tendency to affect what conclusions the USCIS official who interviewed her

drew regarding [the bona fides of her first marriage], or it tended to shut off a line of

inquiry that would have disclosed relevant facts"); *see also Matter of O-R-E*, 28 I. & N.

Dec. 330, 339 n.7 (BIA 2021) ("Materiality is not a 'but for' test. . . . Thus, the DHS need

only establish that the misrepresentation was capable of influencing an adjudicator."

(citations and internal quotation marks omitted)).

The same conclusion follows in this case.  In determining whether to grant a

Form I-485 application that is premised on the applicant's marriage to a United States

citizen, USCIS is obviously concerned not only about the *legality* of that marriage, but

about its *bona fides*.  In other words, even if Prince is correct that his marriage to

Kartumu is recognized under Minnesota law, USCIS would nevertheless have

investigated the bona fides of that marriage if there had been any indication that

Prince's reason for marrying Kartumu was to gain immigration benefits.

Prince's concealment of his first marriage from USCIS undoubtedly "had a

natural tendency to produce the conclusion" that his marriage to Kartumu was bona

fide and, therefore, that he was "qualified" to adjust his status.  *Hirani*, 824 F.3d at 749.

Conversely, had Prince told USCIS that he had been married previously, USCIS would

have inquired about that marriage and learned, among other things, that Prince had

been culturally married to Fredricklyn in Liberia; that Prince applied for a non-

immigrant visa (ostensibly to visit Fredricklyn) just six months later; that Prince visited

the United States pursuant to that non-immigrant visa; that Prince moved out of

Fredricklyn's home and in with another woman who claimed to be his wife just two

months after arriving in the United States and less than one month after Fredricklyn

gave birth to his child; that Prince moved back into Fredricklyn's home a couple of

weeks later and asked her to file a Form I-130 on his behalf; that, as soon as Fredricklyn

filed the Form I-130, Prince moved out of her home a second time and returned to the

home of his other "wife"; and that Prince divorced Fredricklyn just a month after he

received his temporary status and work authorization.

In short, Prince's disclosure of the fact of his first marriage "would predictably have disclosed other facts relevant" to his eligibility, and may well have precipitated investigations into the bona fides of either or both of his marriages. *Kungys*, 485 U.S. at 761. Had USCIS determined that Prince's marriage to Fredricklyn was fraudulent—and there was ample reason for USCIS to do so—such a finding may have been sufficient to render Prince permanently inadmissible. *See* 8 U.S.C. § 1154(c).

For these reasons, the Court finds that the facts misrepresented by Prince in connection with his first Form I-485 application were material because they "tended to shut off a line of inquiry" relevant to his admissibility. *Matter of D-R*, 27 I. & N. Dec. at 113. The Court therefore dismisses Counts I and III of the amended petition.

## C. *Waiver of Inadmissibility*

In Counts II and IV, Prince alleges that, after USCIS issued its Notice of Intent to Deny his second Form I-485 application, USCIS should have told him that he was entitled to file a petition for a waiver of inadmissibility under 8 U.S.C. § 1159(c). Am. Pet. ¶¶ 73, 83–86. Instead, according to Prince, USCIS erred by instructing him to file a petition for waiver under § 1182(i). *Id.* As a result, Prince contends that he should now be allowed to seek a waiver under § 1159(c).

Prince's claims are meritless, for the reasons explained by the Court at the hearing on USCIS's motion to dismiss and reflected in the transcript of that hearing.  To briefly summarize:

Section 1159(c) is a specialized waiver-of-inadmissibility provision that applies to only two groups of non-citizens present in the United States:  (1) those who were admitted under § 1157 as refugees and (2) those who have been granted asylum under § 1158.  Prince falls within neither group.  He does not allege—and nothing in the record suggests—that he was admitted to the United States either as a refugee under § 1157 or as an asylee under § 1158.

Prince nevertheless argues that he is eligible for an inadmissibility waiver under § 1159(c) because he applied to adjust his status under the LRIF—which, again, stands for the "Liberian *Refugee* Immigration Fairness Act."  Prince argues that because Congress included the word "Refugee" in the title of the LRIF, Congress must have intended that those who are admitted under the LRIF be eligible to apply for a § 1159(c) waiver.

Neither the text of § 1159(c) nor the text of the LRIF supports Prince's position. Section 1159 has only three sections.  Section (a) authorizes the adjustment of status for aliens who have been "admitted to the United States [as refugees] *under section 1157* of [Title 8]."  Section (b) authorizes the adjustment of status for aliens who have been

-13-

"granted asylum" under § 1158. And § 1159(c)—the waiver provision—exempts "any alien seeking adjustment of status *under this section*" (i.e., § 1159) from certain grounds for inadmissibility. The next clause of § 1159(c) provides that "the Secretary of Homeland Security or the Attorney General may waive [certain other grounds of inadmissibility] . . . with respect to *such an alien*"—i.e. an "alien seeking adjustment of status under [§ 1159]"—for humanitarian or public-interest reasons. None of this has anything to do with Prince.

The LRIF is not to the contrary. The LRIF exempts those seeking admission under its provisions from four grounds of inadmissibility: §§ 1182(a)(4), (5), (6)(A), and (7)(A). LRIF, § 7611(b)(2). None of those grounds apply to Prince. Congress could have added § 1182(a)(6)(C) to the list—or incorporated the waiver standard from § 1159(c) into the LRIF, as it has into other statutes[5]—but Congress chose not to do so.

For these reasons, the Court dismisses Counts II and IV of the amended petition.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT defendants' motion to dismiss [ECF No. 25] is

---

[5]As recently noted in *Bryant v. Rice*, Case No. 24-CV-3687 (JRT/ECW), 2025 WL 2210889, at *2 (D. Minn. Aug. 4, 2025), Congress has explicitly incorporated the § 1159(c) waiver standard into other adjustment-of-status statutes. *See, e.g.*, Adjustment of Status for Certain Polish and Hungarian Parolees, Pub. L. 104-208, 110 Stat. 3009-709 (1996) (incorporating the § 1159(c) waiver language).

GRANTED, and plaintiffs' amended petition [ECF No. 15] is DISMISSED WITH

PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  September 22, 2025                    /s/ Patrick J. Schiltz
                                              Patrick J. Schiltz, Chief Judge
                                              United States District Court